UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| NATHAN FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 14-173-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN COLVIN, | ) | **&** |
| Commissioner of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court upon the parties' respective motions for summary judgment. [R. 10, 13.] Pursuant to 42 U.S.C. § 405(g), Plaintiff Nathan Freeman seeks judicial review of an administrative decision of the Commissioner of Social Security ("the Commissioner") denying his application for child's disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons explained below, the Court will DENY Freeman's Motion for Summary Judgment [R. 10] and GRANT the Commissioner's. [R. 13.]

**I**

Freeman filed applications for DIB and SSI with the Social Security Administration ("SSA") on April 16, 2010. [Tr. 295.] He alleges a disability arising from "status post remote right arm fracture, obesity, anxiety disorder, and borderline intellectual functioning." [TR. 20.] The SSA denied these applications on September 6, 2010 [Tr. 28.], and further denied his request for reconsideration on January 18, 2011. [Tr. 20.] Freeman then requested a hearing, which Administrative Law Judge ("ALJ") Kenneth Wilson held on February 4, 2011. [Tr. 45.] Wilson

denied Freeman's application on February 29, 2012 [Tr. 243-51], and sustained his decision at a supplemental hearing on August 8, 2013. [Tr. 15-27.]

In evaluating Freeman's claim of disability, the ALJ conducted the standard sequential analysis required under 20 C.F.R. § 416.920.[1] This evaluation includes five steps. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 416.920(a)(4)(iii). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which is an assessment of one's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work. If a claimant's impairments do not prevent him from doing this work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments—considering his RFC, age, education, and past work—

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

prevent him from doing other work that exists in the national economy, he is disabled. 20 C.F.R. § 416.920(a)(4)(v).

In this case, at Step 1, the ALJ found that Freeman had not engaged in substantial gainful activity since February 26, 1992, the date of his birth. [Tr. 20.] At Step 2, the ALJ determined that Freeman had four "severe" impairments: status post remote right arm fracture, obesity, anxiety disorder, and borderline intellectual functioning. [*Id*.] At Step 3, however, the ALJ found that Freeman did "not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairment in 20 C.F.R. part 404, subpt. P, app. 1," including Listing 12.05C, which relates to intellectual disability. [Tr. 21.] After considering the entire record, the ALJ then determined that Freeman possessed the RFC to perform certain kinds of "sedentary work," subject to a number of limitations. These exceptions included, *inter alia*, that Freeman could not "perform a job that requires detailed reading or involves following detailed instructions," could not carry out "complex tasks," could "interact with co-workers, supervisors, and the general public no more than occasionally and c[ould] tolerate only minimal changes in the work setting," and could not "perform a job that require[d] high production quotas." [Tr. 23.] Nevertheless, the ALJ concluded that Freeman could "understand, remember, and carry out simple tasks," could "walk six out of eight hours" a day, and could "maintain his attention to job tasks for two hours at a time throughout an eight hour work day with normal breaks." [*Id.*]

At Steps 4 and 5, the ALJ determined that, although Freeman had no past relevant work experience, there was a significant number of existing jobs in the national economy that Freeman could perform. [Tr. 22-23.] Accordingly, the ALJ concluded that Reynolds was not "disabled" within the meaning of Section 223(d) of the Social Security Act, and was therefore ineligible for

3

DBI or SSI.  [Tr. 23.]  The Appeals Council upheld the ALJ's decision on June 30, 2014.  [Tr. 10.]  Having exhausted his administrative remedies, Freeman now seeks "judicial review of the final decision of the Commissioner pursuant to §§ 205(g), 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g), [and] 1383(c)(3)."  [R. 10 at 3.]  Specifically, the Plaintiff argues (1) "[t]he ALJ's determination that Freeman was able to perform a substantial number of other jobs was not supported by substantial evidence," and (2) the ALJ "failed to properly consider Listing 12.05(c) in his analysis at the third step of the sequential evaluation."  [*Id.* at 4.]

## II

### A

In reviewing an ALJ's decision to deny Social Security benefits, courts must determine whether there is substantial evidence in the record to support the Commissioner's judgment.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  To find such "substantial evidence," courts must perceive "more than a scintilla of evidence but less than a preponderance," which is to say that a court need only find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (internal quotations omitted) (citation omitted).

When searching the record for such evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  Courts are not, however, empowered to conduct

a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Ulman, 693 F.3d at 714*; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

**B**

**i**

In his first challenge to the Commissioner's decision, Freeman argues the record does not contain substantial evidence to support the ALJ's "determination that Freeman was able to perform a substantial number of other jobs." [R. 10 at 4.] In particular, Freeman alleges that hypothetical questions posed to the ALJ's vocational expert—which helped form the foundation of the ALJ's challenged determination—did not sufficiently account for (1) the statements in Freeman's educational records regarding his impairment level and (2) the evaluation of a certified psychologist, Mark Kroger. [*Id.* at 6-7.]

With regard to Freeman's educational records, the Plaintiff highlights statements by school personnel that he needed "prompting and reteaching" [Tr. 110], that his "primary difficulty with completing tasks" related to his "frustration level and lack of confidence" [Tr. 111], and that he required supplementary aids and accommodations to complete his high school assignments. [Tr. 81.] The Court finds, however, that all of these observations closely correspond to the ALJ's determination regarding Freeman's RFC. The fact that Freeman could "often complete [academic] work" but frequently needed "prompting and reteaching" fully

5

comports with the ALJ's conclusion that he could not perform "complex tasks," follow "detailed instructions," or maintain his attention to job tasks for more than "two hours at a time." [Tr. 23.] Similarly, the fact that Freeman struggled to complete academic work at a high school level does not substantially undermine the ALJ's determination that Freeman could "remember and carry out simple tasks." [*Id.*]

Next, Freeman focuses upon Kroger's comment that "the plaintiff has no academic or cognitive capacity that would be of use to him in the pursuit of occupational or vocational endeavors." [Tr. 314.] This statement, standing in isolation, certainly supports Freeman's contention that he is not "able to perform a substantial number of other jobs." [R. 10 at 4.] But Kroger's evaluation also contains many observations that plainly support the ALJ's determination. Each of these comments directly relates to the ALJ's subsequent findings. For example, Kroger found that Freeman's "ability to understand, retain, and follow complex directions [was] moderately to markedly impaired," although his "ability to understand, retain, and follow simple directions" was only "mildly impaired." [Tr. 314.] Accordingly, the ALJ concluded that Freeman could perform "simple" tasks, but not "detailed" or "complex" assignments. [Tr. 23.] Likewise, after Kroger determined that Freeman's "ability to sustain attention and concentration appear[ed] to be mildly to perhaps moderately impaired," the ALJ found that he could only maintain attention to job tasks for "two hours at a time." [*Id.*] Further, because Kroger suggested Freeman's "ability to tolerate stress and pressure and to accept criticism appear[ed] to be moderately impaired," the ALJ concluded that he could "tolerate only minimal changes in the work setting" and could not "perform a job that require[d] high production quotas." [*Id.*]

Freeman admits that the findings above "formulated the foundation for" the ALJ's hypothetical questions to the vocational expert. [R. 10 at 7.] Equipped with that information, the vocational expert determined that Freeman "would be able to perform the requirements of representative sedentary, unskilled occupations such as house cleaner." [Tr. 26.] Freeman nevertheless maintains that, prior to reaching this conclusion, the vocational expert should have had the benefit of Kroger's comment that "the plaintiff has no academic or cognitive capacity that would be of use to him in the pursuit of occupational or vocational endeavors." [Tr. 314.] This statement, however, was not a factual finding; instead, it was speculation drawn from Kroger's observations regarding Freeman's level of impairment. As a certified psychologist, Kroger's expertise did not extend to determinations regarding Freeman's vocational future. Rather, Kroger's task was to measure Freeman's level of impairment in a number of categories. It was the vocational expert's charge, then, to testify regarding the impact of those limitations on Freeman's job prospects. And the record reflects that the ALJ supplied this expert with an accurate summary of Kroger's medical evaluation. Freeman would ask the Court to flip this arrangement on its head, privileging the opinion of a medical expert regarding the plaintiff's job prospects while disregarding the testimony of a vocational expert. Even if the Court were to take Kroger's opinion on this subject into account, however, the foregoing information still provides substantial evidence to support the ALJ's decision.

**ii**

Next, Freeman contends the ALJ "failed to properly consider Listing 12.05(c) in his analysis at the third step of the sequential evaluation." [R. 10 at 8.] At Step 3 of the evaluation process, the claimant has the burden of showing that his impairments are equal or equivalent to a listed impairment. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th

Cir. 2012) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)).  Because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," the evidentiary standards for determining disability by meeting the listed impairments are stricter than the standards employed at later steps in the sequential evaluation process.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *See* 20 C.F.R. §§ 404.1526, 416.926.  To show that his impairment matches a listing, then, the plaintiff must demonstrate his limitation "meet[s] *all* of the specified medical criteria."  *Id.* at 530.  Any impairment "that manifests only some of those criteria, no matter how severely, does not qualify."  *Id*. (emphasis in original); *see also Malone*, 507 F. App'x at 472 (quoting *Zebley*, 493 U.S. at 530).

To meet the criteria for Listing 12.05C, a claimant must show (1) significantly subaverage general intellectual functioning, (2) deficits in adaptive functioning that (3) initially manifested before the age of 22, (4) a valid IQ score of 60 through 70, and (5) an additional mental or physical impairment significantly affecting the claimant's ability to work.  20 C.F.R. pt. 404 subpt. P, app. 1, Listing 12.05C.  Here, the ALJ found that Freeman did not meet Listing 12.05C in part because his IQ score was 75, placing him outside the required range of 60-70.  Nevertheless, Freeman maintains that "an IQ score above 70 does not mean that the claimant cannot establish medical equivalence" to a score of 70 or below.  [R. 10 at 9.]  In support, he cites a provision of the SSA's Program Operations Manual System ("POMS"), which provides in relevant part:

> Listing 12.05C is based on a combination of an IQ score with an additional and significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQs (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS: DI 24515.056(D)(1)(c). Freeman thus argues that, because the ALJ failed "to complete a medical equivalence evaluation" as envisioned by the POMS, the Court must remand this case for further consideration. This argument fails for two reasons. First, the POMS does not indicate that an equivalency determination is required whenever a claimant's IQ falls between 70-75; in fact, the manual expressly provides that such an evaluation is "very rarely required," and only suggests that a slightly higher IQ "may" support an equivalency determination. *Id.* Second, the policy statements in the POMS carry no legal force in this Court; they are merely guidelines, and an ALJ's failure to observe them does not confer a right of action upon the claimant. *See, e.g.*, *Davis v. Sec. of Health and Human Services,* 867 F.2d 336, 340 (6th Cir. 1989) (noting that the POMS "does not have the force and effect of law"). To mandate that an ALJ uniformly follow advisory, non-binding guidelines would breach the "zone of choice within which decision makers can go either way, without interference from the court." *Mullen*, 800 F.2d at 545.

Freeman's claim is remarkably similar to a case of this Circuit, *Riley v. Apfel*, 162 F.3d 1162 (6th Cir. 1998). In *Riley*, the available evidence indicated the claimant's IQ "could be as low as 72." *Id.* at *4. The claimant in that case faulted an ALJ for "fail[ing] to evaluate whether his impairment 'equaled' the listing of 12.05C." *Id.* at *5. Like Freeman, the plaintiff also cited the POMS's suggestion that a "slightly higher" IQ "may support an equivalence determination." *Id.* The Court rejected the claimant's argument, finding the plaintiff had "not presented any medical findings to support his contention that his IQ score [was] equal in severity to the listed

9

IQ score in § 12.05(C)," and the record otherwise "substantially support[ed]" the ALJ's determination regarding the claimant's level of impairment.[2]  *Id.* at *6.

Here, the record likewise provides substantial support for the ALJ's conclusion.  School personnel indicated that Freeman could "often complete academic work" at a high school level (albeit with the help of supplementary aids), that he had "no problem" finishing his "work accurately and without careless mistakes," and that his "primary difficulty" with completing tasks resulted not from a cognitive impairment but his "frustration level and lack of confidence." [Tr. 111.]  Kroger's evaluation, too, suggested Freeman's "ability to understand, retain, and follow simple directions" was only "mildly impaired," and his "ability to sustain attention and concentration" was only "mildly to perhaps moderately impaired."  [Tr. 314.]  Moreover, the claimant's proposed criteria for making an equivalency determination—which include his ability to complete the tasks of daily living, social functioning, and concentration[3]—provide further support for the ALJ's findings.  Freeman testified that he was able to use a computer, prepare meals for himself, straighten up the house, care for his pets, and build model cars.  [Tr. 21-22.]  He did not otherwise "allege any problem performing household chores or seeing to his personal daily needs." [Tr. 22.]  Further, psychologists who reviewed the record found that Freeman's social functioning was only "mildly" impaired, and an "examining psychologist" concluded he had a "fair ability to relate to others."  [*Id.*]  Finally, as stated above, Kroger determined

---

[2] As the court in *Riley* noted, other circuits have reached similar conclusions. *See, e.g., Anderson v. Sullivan,* 925 F.2d 220 (7th Cir. 1991) (holding claimant with IQ score of 71 did not meet Listing 12.05C); *Cockerham v. Sullivan,* 895 F.2d 492 (8th Cir. 1990) (finding IQ of 71 was not sufficient); *Ellison v. Sullivan,* 929 F.2d 534 (10th Cir. 1990) (concluding IQ of 72 was not sufficient).

[3] The Court notes that these criteria all relate specifically to the Listing's separate discussion of "deficits in adaptive functioning," which bears little relation to the specific requirement that a claimant's IQ fall between 60-70.  Because meeting Listing 12.05C requires the claimant to satisfy *all* of the criteria, including the IQ requirement, the plaintiff's exclusive attention to his adaptive functioning level is misplaced.  Nevertheless, because the Plaintiff provides no other evidence supporting his claim of equivalence, the Court will briefly address these factors.

Freeman's concentration level was "mildly to perhaps moderately impaired." [Tr. 314.] One of Freeman's teachers, meanwhile, stated that "a strength for [Freeman] is that he pays attention." [Tr. 314.] Combined, these findings all persuasively indicate that substantial evidence supported the ALJ's decision.

### III

As explained above, this Court must limit its inquiry to the question of whether the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 241). Here, substantial evidence supports the ALJ's finding that (1) a significant number of jobs exist in the national economy in which Freeman could work and thereby contribute meaningfully to society, and (2) he has failed to meet all of the criteria required under Listing 12.05C. Accordingly, and being otherwise sufficiently advised, the Court **HEREBY ORDERS** as follows:

1. Plaintiff's Motion for Summary Judgment [**R. 10**] is **DENIED**;

2. Defendant's Motion for Summary Judgment [**R. 13**] is **GRANTED**;

3. **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This 5th day of February, 2016.



Gregory F. Van Tatenhove
United States District Judge

11